UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTOPHER GRAHAM,

                              Plaintiff,

      v.                                            **DECISION AND ORDER**
                                                                  13-CV-728S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

1.     Christopher Graham challenges the decision of an Administrative Law Judge ("ALJ") that he is not disabled within the meaning of the Social Security Act ("the Act").

2.     Alleging disability due to issues related to his cervical and lumbar spine, a torn meniscus in his right knee, and the loss of his left eye, Graham applied for Social Security benefits on October 16, 2010. The Commissioner of Social Security ("Commissioner") denied that application, and as result, Graham requested an administrative hearing. He received that hearing before ALJ David Lewandowski. The ALJ considered the case *de novo*, and on February 22, 2012, issued a decision denying Graham's application. Graham filed a request for review with the Appeals Council, but the Council denied that request, prompting him to file the current civil action, challenging Defendant's final decision.[1]

3.     On February 28, 2014, Graham and the Commissioner both filed motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.

---

[1] The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.

For the following reasons, Graham's motion is granted and the Commissioner's is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a

*de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520. The claimant has the burden of proof as to the first four steps, but the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

8. In this case, the ALJ made the following findings: (1) Graham has not

3

engaged in substantial gainful activity since his application date (R. 18)[2]; (2) Graham suffers from a series of severe impairments, including, "a C3-4 through C6-7 disc/spur complex with cervical stenosis, right C5 radiculopathy, and degenerative joint disease; right knee meniscus tear; left eye enucleation, right elbow epicondylitis; and mild left carpal tunnel syndrome (R. 19); (3) he does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (id.); (4) he retains the residual functional capacity ("RFC") to perform light work with several exertional limitations, including limitations in working at heights, around heavy machinery, climbing, neck rotation, field of vision on his left side, depth perception, and reaching. (id.); and, pointing to the testimony of a vocational expert, (5) there are jobs that exist in significant numbers in the national economy that he can perform. (R. 24–25.) Ultimately, the ALJ concluded that Graham was not under a disability, as defined by the Act, from his application date through the date of the decision. (R. 25.)

      9.      Graham argues, among other things that the ALJ neglected his duty to develop the record by failing to obtain RFCs from his treating physicians. Although there is no dispute that there is no medical-source statement or RFC from a treating source in the record, the Commissioner contends that one is not needed.

      10.     It is a familiar and oft-cited tenet of Social Security law that an ALJ must affirmatively "develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir.1999) (quoting Pratts v. Chater, 94 F.3d 34, 37 (2d Cir.1996)). Although the regulations provide that "the lack of

---

[2] Citations to the underlying administrative record are designated "R."

the medical source statement will not make the report incomplete," 20 C.F.R. § 404.1513(b)(6), they also provide that the Commissioner will first request such a statement. See Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996) ("[B]efore we make a determination that you are not disabled, we will develop your complete medical history . . . [and] will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." (quoting 20 C.F.R. § 404.1512(d)); see also Robins v. Astrue, No. CV–10–3281 (FB), 2011 WL 2446371, at *3 (E.D.N.Y. June 15, 2011) ("Although the regulation provides that the lack of such a statement will not render a report incomplete, it nevertheless promises that the Commissioner will request one."). There is good reason to impose such a requirement. Simply put, these medical-source opinions are meaningful:

> What is valuable about the perspective of the treating physician – what distinguishes him from the examining physician and from the ALJ – is his opportunity to develop an informed opinion as to the physical status of a patient. To obtain from a treating physician nothing more than charts and laboratory test results is to undermine the distinctive quality of the treating physician . . . .

Peed v. Sullivan, 778 F. Supp 1241, 1246 (E.D.N.Y. 1991).

11. In its brief to this Court, the Commissioner argues that the ALJ fulfilled his duty – that he solicited both records and RFCs from each of the treating sources Graham had identified. Its citation to the record in support of this argument, however, reveals no conclusive sign that RFCs were requested.

12. The Commissioner points to Graham's disability worksheet, found at pages 332 to 337 of the Administrative Record. This worksheet is an internal document used to record actions taken by the district office. Presumably because it is meant for internal use, it is replete with abbreviations, codes, and other cryptic information

5

indiscernible to anyone unfamiliar with this specific bureaucratic syntax. Without attempting to explain any of the information found on the worksheet, the Commissioner argues that this document proves that it solicited both records and RFCs from each of the treating sources Graham had identified. Specifically, it contends, "[i]n every instance where the agency noted that it had sent a form "3883," the agency had requested from the physicians their medical opinion, not just their records." (Def.'s Br. at 5; Docket No. 14.) But the worksheet contains no references to any "3883" form, and there is no such form in the remainder of record. There is simply no sign whatsoever in this document, at least to someone unversed in the shorthand vernacular of the Social Security Administration, that any opinion evidence was requested. Because this worksheet does not even mention a "form 3883," and because the Commissioner fails to explain whatever significance the disability worksheet may have, this Court cannot determine whether any RFCs or other opinion evidence was ever requested. The ALJ's opinion does not clear up the matter: he does not say whether any requests were made.

13.     As in Johnson v. Astrue, the record does contain voluminous medical records from a wide span of time. 811 F. Supp. 2d 618, 629 (E.D.N.Y. 2011). It also contains reports from a consultative examiner and a disability-review physician, as well as Graham's testimony and that of the vocational expert. But, also like Johnson, "there is no reference in the decision or the record as a whole that the ALJ requested RFC assessments from plaintiff's treating sources." Id.

14.     Although the Commissioner argues that the record is sufficiently complete and developed, thus establishing a foundation on which the ALJ could render a full and fair decision, the Commissioner's regulations foreclose this argument. See Robins, 2011 WL 2446371 at *3 ("The Commissioner contends that the medical records

6

obtained were sufficient to make a disability determination" but "the Commissioner's own regulations refute his arguments"). As explained in detail by the Johnson court:

> First, § 404.1512(d) provides "[w]e will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." Second, § 404.1513(b)(6) states that a treating source's medical report should include "[a] statement about what [the claimant] can still do despite [his or her] impairment(s)." Finally, "Social Security Ruling 96–5p confirms that the Commissioner interprets those regulations to mean that "[a]djudicators are generally required to request that acceptable medical sources provide these statements with their medical reports." **In other words, the Commissioner has an affirmative duty to request RFC assessments from plaintiff's treating sources despite what is otherwise a complete medical history**.

811 F. Supp. 2d at 630 (internal citations and quotation marks omitted).

15. Remand is therefore necessary because, despite an otherwise complete record, there is no clear indication that the ALJ fulfilled his duty to request critical opinion evidence from Graham's treating sources. See, e.g., id.; Clark v. Astrue, 08 Civ. 10389(LBS), 2010 WL 3036489, *6 n. 5 (S.D.N.Y. August 4, 2010) (remand required where, *inter alia*, "the administrative transcript d[id] not contain any statements from any of plaintiff's treating sources regarding how plaintiff's impairments affect her ability to perform work-related activities.").

16. On remand, the ALJ must request opinion evidence from Graham's treating physicians. Then, the ALJ must reassess Graham's RFC, taking into account any RFC assessments or "medical source statements" provided in response to his request. Alternatively, the Commissioner can confirm in verifiable fashion that "every reasonable effort" to obtain medical reports has already been made. See 20 C.F.R. § 404.1512(d).

\*\*\*\*

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that this case is REMANDED for proceedings consistent with this Decision and Order.

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated: July 20, 2014
　　　　Buffalo, New York

　　　　　　　　　　　　　　　　　　　　/s/William M. Skretny
　　　　　　　　　　　　　　　　　　　　WILLIAM M. SKRETNY
　　　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　　　United States District Court